IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ISAIAH HOOD-BEY, | **8:24CV474** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS AND MOTIONS FOR DEFAULT JUDGMENT** |
| CHAD M. BROWN, Judge; KEITH KOLLASCH, Attorney; JESSICA WALKER, OMAHA POLICE DEPARTMENT, DMV, BEAU FINLEY, Judge; MARCELA KEIM, DEREK R. VAUGHN, GRANT A. FORSBERG, THOMAS K. HARMON, STATE OF NEBRASKA, DOUGLAS COUNTY CORRECTIONS, LACEE GERWICK, SADIE ABOOD, KAITLIN HAHN, HALL OF JUSTICE-DOUGLAS, OMAHA, NE, JADYN ANDERSON, DR. ALYSSA BISH, DHHS, PROJECT HARMONY, EMILY KIERSCHT, Teacher; MARIA RODEN, Principal; SUNNY SLOPE ELEMENTARY, OMAHA PUBLIC SCHOOLS, CHI IMANNUEL HEALTH, SCOTT, Officer; TANNER REISS, RAUN L. ELLEB, BENJAMIN WEIDNER, AUSTIN BECK, LUCIANO S. RIZZO, NOAH ZENDEJAS, and DOUGLAS E. JOHNSON, | |
| Defendants. | |

*Pro se* plaintiff Isaiah Hood-Bey brings this suit against 33 defendants, ranging from police officers and state court judges to an elementary school and the "Hall of Justice-Douglas, Omaha, NE." Filing 1 at 6. Hood-Bey's claim is that he was injured and his children were "kidnapped" by the Department of Health and Human Services after an injury was found on his son at school and his children were allegedly removed from his custody. The Court has reviewed the state court docket and found five criminal prosecutions against Hood-Bey which seem to give rise to Hood-Bey's lawsuit. *See State v. Isaiah Hood*, Case No. CR23-6798; *State v. Isaiah R Hood*, Case No.

1

CR24-4952; *State v. Isaiah R Hood*, Case No. CR24-5367; *State v. Isaiah R Hood*, Case No. CR24-20084; *State v. Isaiah R Hood*, Case No. CR25-1622. The Court takes judicial notice of these five state court cases. *Nationwide Mut. Ins. Co. v. Richardson*, 108 F.4th 673, 677 n.2 (8th Cir. 2024) (explaining that a court may take judicial notice of public records). It appears that the five state court prosecutions stem from the four factual incidents alleged in this case, Case No. 8:24CV474, two of which are police encounters also alleged in a second case before this Court, Case No. 8:24CV255. The Court's review of the state court docket has also revealed that Hood-Bey has outstanding warrants in all five criminal cases.

Hood-Bey seeks various forms of relief, including the "release of [his] children," the dismissal of multiple "Citations – Summons[es] / Ticket[s] – Suit[s] / (misrepresented) Bill[s] of Exchange," and compensatory and punitive damages from each defendant. Filing 1 at 85–87. Some of the defendants have moved to dismiss Hood-Bey's claims against them, and the Court presently considers three Motions to Dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). Filing 7; Filing 10; Filing 58. The Court also considers seven Motions for Default Judgment filed by Hood-Bey, Filing 27; Filing 28; Filing 60; Filing 62; Filing 64; Filing 68; Filing 69. Hood-Bey has also filed a Motion to Expedite the Court's decision on the Motions for Default Judgment. Filing 72. For the reasons below, the Court grants two of the Motions to Dismiss, grants in part and denies in part the third Motion to Dismiss, denies all of the Motions for Default Judgment, and denies the Motion to Expedite.

In this Order, the Court dismisses 14 of the 33 defendants in this case. The Court stays a single claim against one police officer, not because the Court is convinced an actionable claim has actually been made against that officer, but instead because the Court has determined that evidence is likely needed to fully address that claim given that Hood-Bey alleges the officer injured him

while trying to detain him. The Court gives notice to Hood-Bey that he must file a motion seeking an extension of time to serve the remaining 18 defendants providing good cause why those defendants have not yet been served within the statutorily required 90 days. If Hood-Bey fails to make such a motion or does not provide good cause, those claims will be dismissed as well.

In this case, along with Case No. 8:24CV255, Hood-Bey has purportedly tried to sue a total of 34 defendants, filed hundreds of pages of documents, mailed piles of documents to the Court, and made nonsensical and baseless claims against numerous people and entities. It appears Hood-Bey has tried to sue anyone involved with holding him accountable for his alleged criminal conduct.

Given Hood-Bey's conduct in these lawsuits, the Court finds it appropriate to make sure Hood-Bey knows the potential consequences of making legally frivolous claims in Federal Court. A plaintiff who files frivolous claims or documents can be sanctioned and held personally financially responsible for the costs associated with requiring defendants to respond to nonsense. *Kurkowski v. Volcker*, 819 F.2d 201, 203–04 (8th Cir. 1987) (explaining that Rule 11 of the Federal Rules of Civil Procedure "allows the district court to impose sanctions whenever a plaintiff"— including a *pro se* plaintiff—"has filed a frivolous lawsuit"). In certain cases, and upon appropriate legal action being taken, a plaintiff's assets can be seized to pay for the costs associated with a plaintiff's conduct. *See, e.g.*, *Eckert v. Lane*, 678 F. Supp. 773, 777 (W.D. Ark. Jan. 26, 1988) (imposing Rule 11 sanctions upon a *pro se* plaintiff for "frivolous filings" and directing the United States Attorney for the Western District of Arkansas "to collect such amount by garnishment, execution, or other appropriate means"). Further, if a plaintiff persists in making frivolous filings in court, the Court can ban a plaintiff from making filings or filing any lawsuits in Court for a certain duration in the future. *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988) ("The Court may,

in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. These restrictions may be directed to provide limitations or conditions on the filing of future suits." (internal citations omitted)).

## I. INTRODUCTION

### A. Factual Background

Hood-Bey's "Complaint" is a 121-page collection of documents, ranging from a list of "Proclamations Affirming Moors Are Aboriginals" and a copy of the "Declaration of The Rights of The Child" to Omaha Police Department incident reports and a heavily annotated narrative report from the Nebraska Department of Health and Human Services. *See, e.g.*, Filing 1 at 12, 22, 27, 33. The Court has determined that two documents in particular function as Hood-Bey's operative Complaint: the form document titled "Complaint for a Civil Case" spanning the first six pages of Filing 1 and the document titled "Legal Notice of Removal"[1] found on pages 73 to 88 of Filing 1. The Court refers to these two documents together as the Complaint and thus draws the factual background to the case from the nonconclusory allegations contained in these documents. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (citing *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). As for the remaining 99 pages of appended material, the Court will only address this material to the degree that it is incorporated in or referenced by the Complaint. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)

---

[1] The "Legal Notice of Removal" contains all the hallmarks of a typical complaint, including discussions of jurisdiction, the parties, Hood-Bey's cause of action, and his request for relief, as well as a demand for jury trial. *See* Filing 1 at 73–88. Liberally construing this document and all 121 pages of Hood-Bey's docketed "Complaint," as the Court must, the Court concludes that the "Legal Notice of Removal" is properly construed as an operative pleading. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) ("A *pro se* complaint must be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and '*pro se* litigants are held to a lesser pleading standard than other parties[,]' *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2018).").

4

("Though matters outside the pleadings may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." (quotations omitted)).

Based on the "Cause of Action" section in Hood-Bey's Complaint, all his claims against all the defendants appear to arise out of four undated incidents. Filing 1 at 76–78. The first two incidents are similar in nature: it appears that on two occasions, Hood-Bey was detained by police officers while he was parked in his vehicle and that each time, he was charged with violating multiple statutes (which Hood-Bey claims are private policies "being classed as law"). Filing 1 at 76. Hood-Bey provides noticeably more factual allegations regarding the third and fourth incidents. The third incident allegedly took place while Hood-Bey was parked at a gas station and "[s]eeking help" because he had been assaulted and had his keys and phone stolen in a robbery. Filing 1 at 76. According to Hood-Bey, he had a difficult time communicating with police officers at the gas station because he had suffered a concussion at some point. Filing 1 at 76. After Hood-Bey explained his "appellation" to the officers, the officers told him that he "had warrants." Filing 1 at 76. Hood-Bey alleges that when he tried to explain to the officers that he was already "taking care of the matter in Federal court," he was "told [he was] being charged for trespassing snatched to the ground handcuffed and then [he] was punched in the face where [he] had [his] nose broken." Filing 1 at 76. The officers took Hood-Bey to CHI Immanuel Health to see a doctor and then to Douglas County Corrections where he was allegedly placed on "Suicide Watch and Water Restriction" and experienced a number of unfavorable conditions. Filing 1 at 76.

The fourth incident involves Hood-Bey's family. Filing 1 at 76. According to the Complaint, a teacher and an administrator at Hood-Bey's son's elementary school called Child Protective Services after "seeing [a] 2-3 inch scratch about the size of a paper cut on [Hood-Bey's]

son" and learning from the son that he received the scratch "from wrestling with his father." Filing 1 at 76. Hood-Bey alleges that "the way [his son] explained [the scratch] caused a lot of havoc because he lied about the events and how they took place[,] [s]tating I stabbed him with my key because I grounded him due to his grades and I wouldn't let him play his xbox," when in reality, Hood-Bey claims, the "son lies when he can't get his way." Filing 1 at 77. Hood-Bey asserts that after the educators reported the scratch to Child Protective Services, his son and his three other children were "kidnap[ped]" and made "state wards (which they are not , They are Moorish American Nationals)." Filing 1 at 77 (capitalization and punctuation in the original).

It appears that all these incidents resulted in criminal cases against Hood-Bey that are still pending in state court. *See State v. Isaiah Hood*, Case No. CR23-6798; *State v. Isaiah R Hood*, Case No. CR24-4952; *State v. Isaiah R Hood*, Case No. CR24-5367; *State v. Isaiah R Hood*, Case No. CR24-20084; *State v. Isaiah R Hood*, Case No. CR25-1622. Hood-Bey himself alerted the Court to these state prosecutions by requesting the following relief in his Complaint:

> All UNCONSTITUTIONAL Citations – Summons / Ticket – Suit / (misrepresented) Bill of Exchange: Number (OP4438368, K1195830, K1205889, K1213132, AU20358, AU25355, C 01 CR 23 0006798, C 01 CR 24 0004952, C 01 CR 24 0005367). , and any other 'Order' or 'Action' associated with it / them, to be dismissed and expunged for the record on it's face and merits; or, otherwise, be brought before a legitimately – delegated, and competent 'Court of Law' of International jurisdiction / venue.

Filing 1 at 86 (¶ 7) (spacing, punctuation, capitalization, and spelling in the original). The Court's review of the docket for the County Court of Douglas County has revealed that the various "Citations – Summons[es] / Ticket[s] – Suit[s] / (misrepresented) Bill[s] of Exchange" referenced by Hood-Bey relate to these five state criminal proceedings. The Court also notes that Hood-Bey has outstanding warrants in all five state court criminal cases.

## B. Procedural Background

On December 10, 2024, Hood-Bey sued nearly everyone involved in the four alleged incidents, including the government entities he interacted with, the police officers who detained him, the judges assigned to his cases, the educators who reported his son's injury, and the child services specialists who removed his children. Filing 1 at 76–77. Specifically, Hood-Bey names the following defendants: Judge Chad M. Brown; Judge Beau Finley; Judge Marcela Keim; Judge Derek R. Vaughn; Judge Grant A. Forsberg; Judge Thomas K. Harmon; the State of Nebraska; the DMV; Douglas County Corrections; Lacee K. Gerwick, a corrections officer; the Hall of Justice-Douglas, Omaha, NE; the Nebraska Department of Health and Human Services (DHHS); Project Harmony; Dr. Alyssa Bish, the Director of the DHHS Division of Children and Family Services; Jadyn Anderson, a Children and Family Services specialist; Kaitlin Hahn, a Children and Family Services specialist; Sadie Abood, a Children and Family Services specialist; Keith Kollasch, an attorney; Omaha Public Schools; Sunny Slope Elementary School; Emily Kierscht, a teacher; Maria Roden, a principal; CHI Immanuel Health; the Omaha Police Department; Officer Jessica Walker; Officer Scott (first name unknown); Officer Tanner Reiss; Officer Raun L. Elleb; Officer Benjamin Wiedner; Officer Austin Beck; Officer Luciano S. Rizzo; Officer Noah Zendejas; and Officer Douglas E. Johnson. Filing 1 at 6, 73–75.

Hood-Bey's Complaint does not contain specific causes of action against the defendants, but instead makes general allegations of various constitutional and other violations. Hood-Bey claims that most[2] of the defendants:

> knowingly and willingly conspire[ed] (under a Color-of-Authority) to deny this Petitioner, Isaiah Hood-Bey, (after this Petitioner made a reservation of rights and stating for the record: name, correct spelling of name, and national status) His

---

[2] Hood-Bey omits the four School Defendants and defendant CHI Immanuel Health from the otherwise-inclusive list of defendants he claims "knowingly and willingly conspir[ed]" to deny his rights under the United States Constitution and various other treaties. Filing 1 at 78.

Inalienable Rights, the right to a Name and Nationality of His choosing, etc. The State / Judge / Accuser(s) alleged and assumed the Petitioner of being a Corporate Ward-ship 14th Amendment Artificial Negro Person / citizen, which resulted in an unlawful arrest-of-rights, immunities and liberties; which is in direct contradiction to, and a violation of, the Fourth (IV) Amendment of the Constitution for the United States (Republic); violating Article VI of the Constitution, by way of violating The Treaty of Peace and Friendship of EIGHTEEN HUNDRED-THRITY-SIX (1836) A.D.; Congressional Resolution # 75, Philadelphia Pennsylvania; a violation of Article 15 of 'The Universal Declaration of Human Rights' of Nineteen Hundred and Forty-Eight (1948) A.D. – General Assembly, United Nations; a violation of 'The Declaration of the Rights of the Child' of            Nineteen          Hundred          and          Fifty-Nine(1959) A.D. [hyperlink omitted]; and violating 'The Rights of Indigenous Peoples'; and that the Officers of THE STATE OF NEBRASKA knowingly committed 'fraud' against the Petitioner (Isaiah Hood-Bey) by abusing their authority, in that they failed to correct a known violation; and did not aid in preventing said such abuse of authority, while having (by law) the obligation to do so; and violated the Fifth Amendment of The Bill of Rights of Seventeen Hundred and Ninety-One (1791) A.D.; impeding the Peoples' **right to due process under the Law, and equal protection of the Law,** Article 1 Section 10 of The Constitution for The United States of America (Republic) which secures this Petitioner the right to contract and conspiracy to commit fraud against this Petitioner and against the United States Republic.

Filing 1 at 78 (emphasis, spacing, punctuation, spelling, and capitalization in the original).

Multiple defendants have moved to dismiss Hood-Bey's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Keith Kollasch, an attorney, filed a Motion to Dismiss the claims against him on December 30, 2024. Filing 7. On January 9, 2025, defendants Omaha Public Schools, Sunny Slope Elementary School, Maria Roden, and Emily Kierscht (collectively, the School Defendants) likewise moved to dismiss. Filing 10. Defendants Omaha Police Department (OPD), Jessica Walker, Officer Scott, Tanner Reiss, Raun L. Elleb, Benjamin Weidner, Austin Beck, Luciano S. Rizzo, Noah Zendejas, and Douglas E. Johnson (collectively, the OPD Defendants) filed their Motion to Dismiss on February 6, 2025. Filing 58. In response to these Motions to Dismiss, Hood-Bey has filed seven Motions for Default Judgment. Filing 27 ("Supplemental" Motion for Default Judgment against the School Defendants); Filing 28 ("Supplemental" Motion for Default Judgment against all defendants); Filing 60 (Motion for

Default Judgment against the OPD Defendants); Filing 62 (Motion for Default Judgment against the School Defendants); Filing 64 (Motion for Default Judgment against the OPD defendants); Filing 68 (Motion for Default Judgment against the OPD Defendants); Filing 69 (Motion for Default Judgment against all defendants). Hood-Bey has filed a Motion for Clerks Entry of Default Judgment against all the defendants, but this Motion has been stricken pursuant to NEGenR 1.3(a)(4) because it is a duplicate of Filing 69. Filing 70; Filing 71 (Text Strike Order). Hood-Bey has also filed a Motion to Expedite the Court's decision on the Motions for Default Judgment. Filing 72.

## II. LEGAL ANALYSIS

### A. Preliminary Matters

The Court begins with a few preliminary matters before it turns to the three Motions to Dismiss and Hood-Bey's numerous Motions for Default Judgment.

#### 1. Hood-Bey's Claims for Injunctive Relief

First, the Court addresses a threshold jurisdictional issue regarding Hood-Bey's claims for injunctive relief. The Court has already mentioned that Hood-Bey seeks the dismissal of various "Citations – Summons[es] / Ticket[s] – Suit[s] / (misrepresented) Bill[s] of Exchange" related to the five state court prosecutions against him. Filing 1 at 86 (¶ 7). In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held "that concepts of comity and federalism require federal courts to abstain from interfering with pending state court criminal proceedings, except under 'special circumstances' such as bad-faith prosecution or when a criminal statute is 'flagrantly and patently' unconstitutional on its face." *Wassef v. Tibben*, 68 F.4th 1083, 1086–87 (8th Cir. 2023) (quoting *Younger*, 401 U.S. at 41, 44–45, 53–54). In other words, the *Younger* abstention doctrine dictates that "federal courts may not enjoin pending state court criminal proceedings except in very unusual situations." *Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163

9

F.3d 475, 479 (8th Cir. 1998). The Eighth Circuit Court of Appeals has identified a "three-part inquiry" for determining whether *Younger* abstention applies:

> First, does the underlying state proceeding fall within one of the three "exceptional circumstances" where *Younger* abstention is appropriate? Second, if the underlying proceeding fits within a *Younger* category, does the state proceeding satisfy what are known as the "*Middlesex*" factors? And third, even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?

*Wassef*, 68 F.4th at 1087 (quoting *375 Slane Chapel Rd., LLC v. Stone Cnty., Missouri*, 53 F.4th 1122, 1127 (8th Cir. 2022)).

*Younger* abstention is appropriate for Hood-Bey's claims seeking dismissal of his pending state criminal charges. First, Hood-Bey's five pending state criminal cases are "ongoing state criminal prosecutions" that fall within the exact "class of cases in which federal-court abstention is required" under *Younger*. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72, 78 (2013) ("*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."). Second, to the extent the *Middlesex* factors bear on whether *Younger* applies to underlying criminal proceedings, they support abstention here. The *Middlesex* factors evaluate whether there is "(1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides the federal plaintiff adequate opportunity to raise federal challenges." *Wassef*, 68 F.4th at 1087 (citing *Middlesex Cnty Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 432–35 (1982)). Hood-Bey's state court criminal proceedings are ongoing because there are outstanding warrants for his arrest in each case. *See Key v. Does*, 217 F.Supp.3d 1006, 1009 (E.D. Ark. Nov. 17, 2016) ("[I]f [the federal plaintiff] is requesting relief from an outstanding warrant related to the conviction and nonpayment of fines, then this Court must abstain from interfering with the ongoing state action, whether criminal or civil, absent exceptional

10

circumstances, which are not alleged."). Additionally, "criminal proceedings implicate state interests of the highest order," *Ronwin v. Dunham*, 818 F.2d 675, 678 (8th Cir. 1987), and Hood-Bey can "presumably raise" his constitutional claims as defenses to those criminal proceedings, *Cormack v. Settle-Beshears*, 474 F.3d 528, 532 (8th Cir. 2007). Finally, Hood-Bey's Complaint does not allege that there was "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate." *Night Clubs, Inc.*, 163 F.3d at 476 (internal quotation marks omitted) (quoting *Middlesex*, 457 U.S. at 432).

Because *Younger* abstention is appropriate, the Court dismisses Hood-Bey's claims requesting the dismissal of his underlying and ongoing state criminal cases. *See Wassef*, 68 F.4th at 1086–87, 1091. *See also Auleciems v. Twp. of West Lakeland*, No. 24-cv-1661, 2025 WL 509188, at *8 (D. Minn. Feb. 14, 2025) (dismissing without prejudice for lack of jurisdiction the federal plaintiff's claims seeking injunctive relief related to his underlying state criminal case). Accordingly, Hood-Bey's claims for injunctive relief are dismissed from his Complaint.

## 2. Hood-Bey's Claims for Damages

Hood-Bey also seeks compensatory and punitive damages. While *Younger* requires courts to abstain from exercising jurisdiction over claims for injunctive or declaratory relief that would interfere with ongoing state criminal proceedings, "[c]laims for damages are different" and generally "a federal court may not decline to exercise jurisdiction over" such claims. *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 603 (8th Cir. 1999) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)). Instead, "federal courts applying abstention principles in damages actions [can] enter a stay, but [the Supreme Court has] not permitted them to dismiss the action altogether." *Quackenbush*, 517 U.S. at 730. In *Wallace v. Kato*, the Supreme Court explained that where a plaintiff files a "claim related to rulings that will likely be made in a pending or anticipated criminal trial[ ], it is within the power of the district court and in accord with

11

common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." 549 U.S. 384, 393–94 (2007).

The Court will discuss Hood-Bey's claims in more detail below, but the Court acknowledges here that because the factual basis for Hood-Bey's claims before this Court appears to be the same as the factual basis for his five state court prosecutions, his claims for damages are "related to rulings that will likely be made in" his ongoing state cases. *Wallace*, 549 U.S. at 393. Thus, it is within the Court's power to stay Hood-Bey's entire civil action. *See id.* However, the Court concludes that a wholesale stay of Hood-Bey's action is not appropriate because his Complaint fails to state a claim as to the majority of the claims for other reasons. The Court will examine those other reasons in its analysis of the Motions to Dismiss and will only exercise its power to stay with respect to Hood-Bey's claims that are not otherwise deficient.

### 3.    *Construing Hood-Bey's Motions for Default Judgment*

Finally, the Court must briefly discuss the nature of Hood-Bey's first six motions.[3] Filing 27; Filing 28; Filing 60; Filing 62; Filing 64; Filing 68. All six motions are docketed as Motions for Default Judgment, *see* Docket No. 8:24CV474, and to the extent that the motions actually are Motions for Default Judgment, the Court addresses their merits in Section II.C. below. Upon review, however, it appears that Hood-Bey's Motions for Default Judgment also function as responses to the various Motions to Dismiss. *See* Filing 27 at 1 ("Opposition to Motion to Dismiss and Counter Motion for Default Judgment"); Filing 28 at 1 (same); Filing 60 at 1 ("Response to Motion to Dismiss for Failure to State a Claim"); Filing 62 at 1 ("Plaintiff's Counter-Motion to Dismiss Defendant's Motion to Dismiss and Request for Relief"); Filing 64 at 1 ("Counter Motion

---

[3] Unlike Hood-Bey's first six Motions for Default Judgment, Hood-Bey's final Motion for Default Judgment, Filing 69 (Motion for Default Judgment against all defendants), was not filed shortly after a Motion to Dismiss and does not appear to be a multipurpose document.

to Dismiss"); Filing 68 at 1 (same). Hood-Bey's motions are disjointed—all of them reference "legal authority" apparently underlying Hood-Bey's claims or arguments, most of them provide a "statement of facts" expanding on the minimal facts alleged in the Complaint, and some of them do not even mention "default judgment" once. *See, e.g.*, Filing 60 at 2–3 (discussing the "legal authority" that allegedly supports Hood-Bey's claims and requesting relief that does not include default judgment); Filing 28-9 at 2 (outlining the "Legal and Ethical Violations" allegedly committed by defendant CHI Immanuel Health and citing to statutes and cases presumably demonstrating those violations); Filing 27 at 1–2 (presenting the "factual background" for Hood-Bey's claims); Filing 62 at 3 (requesting relief that does not include default judgment but does include "Plaintiff's original requested relief"). Hood-Bey's first two motions are docketed as "Supplemental" Motions for Default Judgment and are particularly unwieldy. *See generally* Filing 27; Filing 28. Both Supplemental Motions span more than 100 pages and include a document titled "Exhibit A: Chronological Events that led to Both lawsuits 8:24CV00255 MDN-SMB and 8:24CV00474BCB-RCC" that alleges for the first time facts related to the four incidents referenced in Hood-Bey's Complaint. Filing 27-5 ("Exhibit A"); Filing 28-12 ("Exhibit A").

The Court's local rules make it clear that a party opposing a motion—including a motion to dismiss—"must not file an 'answer,' 'opposition,' 'objection,' or 'response,' or any similarly titled responsive pleading" but instead "must file a brief that concisely states the reason for opposing the motion and cites to supporting authority" and only recites facts to the extent NECivR 7.1(b)(2) permits. NECivR 7.1(b)(1)(A). "[A] party who does not follow [NECivR 7.1] may be considered to have abandoned in whole or in part that party's position on the pending motion." NECivR 7.1. Although Hood-Bey is proceeding *pro se* in this matter, he must still comply with local rules, court orders, and the Federal Rules of Civil Procedure. *See Ackra Direct Mktg.*

*Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) ("In general, *pro se* representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure."); NEGenR 1.3(g) ("Unless stated otherwise, parties who proceed pro se are bound by and must comply with all local and federal procedural rules."). To the extent Hood-Bey intended for his Motions for Default Judgment to function as responses to the moving defendants' Motions to Dismiss, Hood-Bey plainly has not complied with NECivR 7.1(b)(1)(A).

Instead of treating Hood-Bey's arguments as abandoned, however, the Court is mindful that "[a] document filed *pro se* is to be liberally construed." *Olsen as Trustee for Xurex Inc. v. Di Mase*, 24 F.4th 1197, 1202 (8th Cir. 2022) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). The Court accordingly applies a liberal construction to Hood-Bey's six motions and, when appropriate, construes them as briefs opposing the moving defendants' Motions to Dismiss. *See Erickson*, 551 U.S. at 94. The Court will not consider factual allegations (like those in Exhibit A) that were not included in Hood-Bey's Complaint and that were first alleged in opposition to the Motions to Dismiss. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) ("While [the plaintiff] presented additional facts in his oppositions to the motions to dismiss and now presents additional facts on appeal, those factual allegations were not included in his amended complaint and, thus, cannot be considered on a motion to dismiss."). Furthermore, the Court cautions Hood-Bey that he must comply with local rules, court orders, and the Federal Rules of Civil Procedure in the future. *See* NEGenR 1.3(g); *Bennet v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) ("[The plaintiff's] pro se status did not entitle him to disregard the Federal Rules of Civil Procedure, even without affirmative notice of the application of the rules to his case." (internal quotations marks omitted)).

### B.  The Motions to Dismiss

The Court now turns to the Rule 12(b)(6) Motions to Dismiss filed by defendant Kollasch, the School Defendants, and the OPD Defendants.

### 1.    Rule 12(b)(6) Standards

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not

parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer*, 25 F.4th at 589 (quoting *Pietoso, Inc.*, 4 F.4th at 622). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Pleading standards are more liberal for *pro se* plaintiffs. The Eighth Circuit has explained, "A *pro se* complaint must be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and '*pro se* litigants are held to a lesser pleading standard than other parties[,]' *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)." *Topchian*, 760 F.3d at 849. In addition, "it is the facts alleged in a complaint, and not the legal theories, that state a claim," and "federal courts must examine a complaint to determine if the allegations set forth a claim for relief." *Id.* (citations omitted). Accordingly, courts must "decide whether [the *pro se* plaintiff] has pleaded sufficient facts in his [ ] complaint to state a claim under any legal theory. If he has, his [ ] complaint should not [be] dismissed." *Id.* Liberally construing a complaint "is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." *Id.* at 914 (internal citations omitted).

16

2.    *Hood-Bey's Claims Against the Moving Defendants*

Before applying these standards to the Motions to Dismiss, the Court briefly discusses what claims—if any—Hood-Bey has advanced against the moving defendants. The Court has already explained that the Complaint does not contain specific causes of action against any of the 33 defendants. This makes it an unnecessarily complicated task for the Court to ascertain the claims Hood-Bey attempts to bring against the moving defendants, but a task the Court engages in nonetheless because "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks and citations omitted).

a.    Constitutional Claims under 42 U.S.C. § 1983

Construed liberally, Hood-Bey's Complaint asserts claims under 42 U.S.C. § 1983 for violations of his constitutional rights. *See Topchian*, 760 F.3d at 849. Specifically, the Court ascertains claims for violations of Hood-Bey's Fourth Amendment rights in the form of unlawful arrest and excessive force claims. The Court also ascertains claims for violations of Hood-Bey's "right to due process under the Law, and equal protection of the Law" under the Fourteenth Amendment (although Hood-Bey characterizes these as Fifth Amendment claims). Filing 1 at 78, 85 (emphasis omitted). Hood-Bey does not specifically allege whether he is asserting substantive due process or procedural due process violations, so the Court will consider both types of due process claims when appropriate. As for any substantive due process claims, it appears that Hood-Bey has attempted to assert violations of his right to travel and his rights as a parent.

Hood-Bey's Complaint contains references to more than a dozen other constitutional clauses and legal provisions, but not even the "essence of an allegation is discernible" regarding those references. *Stone*, 364 F.3d at 915. As a result, the only § 1983 claims the Court will consider are Hood-Bey's Fourth and Fourteenth Amendment claims.

17

b.   State Law Claims

A couple of Hood-Bey's allegations hint at tort claims under Nebraska state law. *See* Filing 1 at 4 (explaining that Hood-Bey and his "spouse are going Through emotional distress), 76 (alleging that Hood-Bey was "assaulted by Officer Scott (first name Unknown Badge Number 2467)"). Indeed, several of the moving defendants have presented arguments against any potential state law tort claims that might exist in Hood-Bey's enigmatic Complaint. *See, e.g.*, Filing 11 at 3; Filing 59 at 12. However, any allegations regarding state law claims are few compared to Hood-Bey's allegations suggesting § 1983 claims, and Hood-Bey himself emphasizes many times in the hundreds of pages of documents he has filed with the Court that his claims are for "constitutional violations, civil rights abuses, and human rights violations." Filing 60 at 1. *See, e.g.*, Filing 27 at 1 (maintaining that the defendants violated constitutional and international law); Filing 27-1 at 3 (describing claims for violations of his constitutional rights as a parent); Filing 28-1 at 1–3 (characterizing all of the "issues" as constitutional ones); Filing 60 at 3 (arguing that he has "clearly stated claims supported by federal law, constitutional protections, and international human rights agreements"); Filing 60-1 at 3–4 (listing his legal claims and characterizing each as a violation of the United States Constitution or a federal statute).

Accordingly, the Court will consider only whether Hood-Bey has stated any plausible § 1983 claims against the moving defendants and the Court will not address the moving defendants' arguments against any nonexistent state law claims.

### 3.   *Defendant Kollasch's Motion to Dismiss*

Defendant Kollasch seeks dismissal of Hood-Bey's Complaint because "Plaintiff fails to attach any allegation within the Complaint to Defendant Kollasch" and because "Defendant Kollasch is not listed in the 'Parties' section nor is [he] referenced in any allegation within the 'Cause of Action' section of the Complaint." Filing 7 at 1. Although Kollasch's Motion to Dismiss

lists several reasons Hood-Bey "fails to state a claim upon which relief can be granted in respect to Defendant Kollasch," the motion cites no legal authority and does not include a brief as required by NECivR 7.1(a)(1)(A). *See* NECivR 7.1(a)(1)(A) ("A motion raising a substantial issue of law must be supported by a brief filed and served together with the motion."). It is certainly within the Court's discretion to deny Kollasch's motion because of his failure to comply with the Court's local rules. *See* NECivR 7.1(a)(1)(B) ("If the court concludes that a motion raises a substantial issue of law, however, it may treat the failure to file a brief as an abandonment of the motion."); *R.A.D. Servs. LLC v. State Farm Fire & Cas. Co.*, 60 F.4th 408, 412 (8th Cir. 2023) ("The district court has considerable discretion in applying its local rules." (internal quotation marks and citation omitted)).

Notwithstanding Kollasch's noncompliance, the Court exercises its discretion to grant his Motion to Dismiss because Hood-Bey's Complaint does not "contain sufficient factual matter, accepted as true, 'to state a claim to relief [against Kollasch] that is plausible on its face.'" *Christopherson*, 33 F.4th at 499 (quoting *Schulte v. Conopco, Inc.*, 997 F.3d 823, 825 (8th Cir. 2021)). Indeed, Hood-Bey's Complaint does not contain any factual allegations regarding Kollasch or his role in any of the four alleged incidents, much less "factual content that allows the [C]ourt to draw the reasonable inference that [Kollasch] is liable for the misconduct alleged." *Christopherson*, 33 F.4th at 499 (internal quotation marks and citations omitted). *See generally* Filing 1. Accordingly, Kollasch's Motion to Dismiss is granted, and Kollasch is dismissed as a defendant.

### 4.  *The School Defendants' Motion to Dismiss*

The School Defendants—Omaha Public Schools (OPS), Sunny Slope Elementary School, Principal Maria Roden, and Emily Kierscht, a teacher—have also moved to dismiss Hood-Bey's claims against them. Filing 10. As the School Defendants point out, Hood-Bey's Complaint does

not include many factual allegations against them. Filing 11 at 2. Based on the Court's review,

Hood-Bey alleges only the following regarding the School Defendants:

> 5. Maria Roden (Principal at Sunny Slope Elementary), Emily Kierscht (Teacher at Sunny Slope Elementary), SUNNY SLOPE ELEMENTARY, an Extension of OMAHA PUBLIC SCHOOLS, private corporation, foreign to the United States Republic; and foreign to the organic Nebraska Republic.
>
> . . .
>
> The Petitioner / Isaiah Hood-Bey while out of town on a job received a call from his spouse that Emily Kierscht ( The Teacher) and Maria Roden ( Principal ) at Sunny Slope Which is an extension of Omaha Public Schools called CPS ( Child Protective Services ), ( In which She Emily and or Maria Should have called my spouse and asked what happened before it even got this far) but due to Emily seeing 2-3 inch scratch about the size of a paper cut on my son who stated "he got that from wrestling with his father (Me)["] but the way he explained it caused a lot of havoc because he lied about the events and how they took place. Stating I stabbed him with my key because I grounded him due to his grades and I wouldn't let him play his xbox[.]
>
> . . .
>
> **15)**        Plaintiff OMAHA PUBLIC SCHOOLS is being sued for $1.5million for compensatory damages and $300,000 for punitive damages in its official capacity.
>
> **16)**        Plaintiff SUNNY SLOPE ELEMENTARY is being sued for $700,000 for compensatory damages and $300,000 for punitive damages in its official capacity.
>
> **17)**        Plaintiff Maria Roden – is being sued for $75,000 for compensatory damages and $75,000 for punitive damages in her private capacity[.]
>
> **18)**        Plaintiff Emily Kierscht – is being sued for $75,000 for compensatory damages and $75,000 for punitive damages in her private capacity[.]

Filing 1 at 75 (¶ 5), 76–77, 86 (¶¶ 15–18) (emphasis, spacing, punctuation, spelling, and

capitalization in the original).

Giving a *pro se* complaint liberal construction "mean[s] that if the essence of an allegation

is discernible, even though it is not pleaded with legal nicety, then the district court should construe

the complaint in a way that permits the layperson's claim to be considered within the proper legal

framework." *Topchian*, 760 F.3d at 849 (quoting *Stone*, 364 F.3d at 915). "That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 915. Here, it is clear that any claim Hood-Bey attempts to bring against the School Defendants arises out of Roden's and Kierscht's alleged act of reporting to CPS a "2-3 inch scratch" they noticed on Hood-Bey's son. Without additional factual allegations, however, the Complaint does not contain sufficient nonconclusory allegations to "make it not just 'conceivable' but 'plausible'" that the School Defendants are liable for making this report. *Mitchell*, 28 F.4th at 895 (quoting *Iqbal*, 556 U.S. at 683).

Nowhere in the Complaint does Hood-Bey accuse the School Defendants of violating any of his rights—constitutional, statutory, or otherwise. *See generally* Filing 1. Hood-Bey argues in his Supplemental Motion for Default Judgment/Opposition to Motion to Dismiss and Counter Motion for Default Judgment, Filing 27, that the School Defendants' "initiat[ion of] CPS involvement without a full investigation" constituted an "unlawful interference" with Hood-Bey's "constitutional rights, including due process, equal protection, and parental rights," but he makes no such allegation his Complaint. Filing 27 at 3. *See Glick*, 944 F.3d at 717. In fact, Hood-Bey altogether omits the School Defendants from the list of defendants he accuses of "knowingly and willingly conspiring" to deny his rights under various constitutional and other provisions. Filing 1 at 78 ("Cause of Action" paragraph previously quoted by the Court in Section I.B. above). At most, Hood-Bey claims in a parenthetical aside that "Emily and or Maria Should have called my spouse and asked what happened [to Hood-Bey's son] before it even got this far," but he does not allege that their report was false or that the School Defendants violated any of his constitutional rights by making it. Filing 1 at 76. In other words, Hood-Bey has not pleaded that the School Defendants

engaged in any "misconduct" much less "plead[ed] factual content that allows the [C]ourt to draw the reasonable inference that the [School Defendants are] liable for the misconduct alleged." *Christopherson*, 33 F.4th at 499 (internal quotation marks and citations omitted).

Even if the Court liberally construes Hood-Bey's allegation that the School Defendants should have contacted him and his spouse "before it even got this far" as a substantive due process claim for the violation of his "recognized liberty interest in the care, custody, and management of [his] children," Hood-Bey still has not stated a plausible claim against the School Defendants. *Mitchell v. Dakota Cnty Social Servs.*, 959 F.3d 887, 897 (8th Cir. 2020) ("Parents have a recognized liberty interest in the care, custody, and management of their children."). The Eighth Circuit has explained that:

> To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience." *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013). Whether conduct shocks the conscience is a question of law. *Id.* Conscience shocking conduct only includes "the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (quotation marks omitted). "Only a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Folkerts*, 707 F.3d at 981 (cleaned up).

*Mitchell*, 959 F.3d at 898. The Court doubts that any of Hood-Bey's fundamental rights were violated when the School Defendants reported the son's scratch, *see id.* at 897 ("[T]he right to family integrity does not include a constitutional right to be free from child abuse investigations."), but even assuming such rights were violated, Hood-Bey has not alleged that the School Defendants engaged in any conduct "so severe" that "it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience," *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (internal quotation marks omitted). Accordingly, the School Defendants' Motion to Dismiss is granted, and they are dismissed from the case.

22

### 5.    *The OPD Defendants' Motion to Dismiss*

The OPD Defendants—the Omaha Police Department, Jessica Walker, Officer Scott (first name unknown), Tanner Reiss, Raun L. Elleb, Benjamin Weidner, Austin Beck, Luciano S. Rizzo, Noah Zendejas, and Douglas E. Johnson—also seek dismissal of Hood-Bey's claims against them. Filing 58. The OPD Defendants argue that Hood-Bey's "claims are not readily apparent given the form and content of the Complaint, but it is clear the Plaintiff has failed to allege facts sufficient to plausibly support any viable claim" against them. Filing 59 at 3.

The OPD Defendants are correct that Hood-Bey's claims against them are not readily apparent, in large part because Hood-Bey fails to identify any specific causes of action against any defendant. *See generally* Filing 1. Still, Hood-Bey's Complaint contains substantially more factual allegations pertaining to the OPD Defendants than to defendant Kollasch, and unlike the School Defendants, Hood-Bey does accuse the OPD Defendants of violating his constitutional rights. Filing 1 at 78. Accordingly, the Court will consider whether Hood-Bey has plausibly stated any Fourteenth Amendment or Fourth Amendment claims against the OPD Defendants. First, however, the Court addresses the OPD Defendants' argument that the Omaha Police Department itself should be dismissed from this case.

### a.    The Omaha Police Department Cannot Be Sued

The OPD Defendants seek dismissal of the Omaha Police Department as a defendant because "[t]he Omaha Police Department does not have the capacity to sue or be sued." Filing 59 at 4 (reduced from capitals). Although the OPD Defendants' Motion is only pursuant to Rule 12(b)(6), their argument that OPD cannot "sue or be sued" asserts a Rule 12(b)(2) ground for dismissal. *See* Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction); *Meyer v. Lincoln Police Dept.*, 347 F. Supp. 2d 706, 706 (D. Neb. Dec. 14, 2004) (treating the police department defendant's argument that it is not subject to suit as an invocation of Rule 12(b)(2)). The OPD

Defendants recognize this when they argue that OPD should be dismissed because "there is no personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), and the Plaintiff fails to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6)." Filing 59 at 7.

Specifically, the OPD Defendants argue that under Federal Rule of Civil Procedure 17(b), "personal jurisdiction is determined by the laws of the State of Nebraska in this matter." Filing 59 at 5. *See* Fed. R. Civ. P. 17(b)(2) ("Capacity to sue or be sued is determined as follows . . . for a corporation, by the law under which it was organized. . . .") and Fed. R. Civ. P. 17(b)(3) ("Capacity to sue or be sued is determined as follows . . . for all other parties, by the law of the state where the court is located. . . ."). The OPD Defendants maintain that while the City of Omaha falls within the definition of a "political subdivision" under Neb. Rev. Stat. § 13-903 and is subject to suit and service of process under Neb. Rev. Stat. § 14-101 and § 25-510.02, "no provision of state code declares municipal police departments to be distinct political subdivisions or grants them the power to sue or be sued." Filing 59 at 4. *See* Neb. Rev. Stat. § 13-903(1) ("Political subdivision shall include villages, cities of all classes, counties, school districts, learning communities, public power districts, and all other units of local government. . . ."); Neb. Rev. Stat. § 14-101 ("Each city of the metropolitan class shall be a body corporate and politic and shall have power (1) to sue and be sued. . . ."); Neb. Rev. Stat. § 25-510.02(3) ("Any political subdivision of this state, as defined in subdivision (1) of section 13-903 . . . may be served by personal, residence, certified mail, or designated delivery service. . . ."). Rather, the OPD Defendants argue, the City of Omaha has not delegated its power to sue or be sued to its various departments, including OPD, and such departments also do not fall within the statutory definition of a political subdivision. Filing 59 at 5–6 (citing Omaha Home Rule Charter, Art. I, § 1.03; Art. III, § 3.07; Neb. Rev. Stat. § 13-903).

For support, the OPD Defendants point the Court to *Meyer v. Lincoln Police Dept.*, where Judge Smith Camp concluded that although the City of Lincoln was clearly a political subdivision subject to suit and service of process under Nebraska law, "[n]o similar constitutional or statutory provisions exist[ed] with respect to departments of municipalities, such as city police departments." 347 F. Supp. 2d at 706–07. In *Meyer*, Judge Smith Camp determined that the Lincoln Police Department was not a political subdivision under Neb. Rev. Stat. § 13-903, but "an agency *of* a political subdivision," and therefore was properly dismissed as a defendant because it "ha[d] no separate legal status under Nebraska law." 347 F. Supp. 2d at 707 (emphasis in the original). Other judges in this district have similarly held that a city police department is "not a distinct legal entity amenable to suit under" 42 U.S.C. § 1983. *Fehderau v. Omaha Police Dep't*, No. 8:18CV592, 2019 WL 4858303, at *2 (D. Neb. Oct. 2, 2019) (concluding that the Omaha Police Department "is a non-suable entity"); *Mayer v. Plainview Neb. City Gov't & Police*, No. 8:24CV406, 2024 WL 4605265, at *2 (D. Neb. Oct. 29, 2024) ("The Plainview Police Department is also not a proper [defendant] as police departments are not suable entities under § 1983."); *St. Thomas Grp., Inc. v. City of Omaha*, No. 8:24CV331, 2025 WL 35944, at *6 (D. Neb. Jan. 6, 2025) ("This Court has consistently held that Nebraska law does not grant city police departments the capacity to sue or be sued.").

Hood-Bey has not presented any argument or authority supporting a different conclusion here. Accordingly, the Court holds that OPD is not a suable entity under Nebraska law. *See Meyer*, 347 F.Supp.2d at 707. OPD is therefore dismissed as a defendant.

b. Hood-Bey's § 1983 Claims Against the Remaining OPD Defendants

The Court now turns to Hood-Bey's § 1983 claims against the remaining OPD Defendants: his substantive due process, procedural due process, and equal protection claims under the

25

Fourteenth Amendment, and his unlawful arrest and excessive force claims under the Fourth Amendment. The OPD Defendants argue that they are entitled to qualified immunity on Hood-Bey's constitutional claims. Filing 59 at 8.

"Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024) (internal quotation marks omitted) (quoting *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc)). "To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks and citations omitted). "Unless both of these questions are answered affirmatively, an [official] is entitled to qualified immunity." *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (internal quotation marks omitted) (quoting *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014)). "Courts have discretion to decide the order to evaluate the two prongs of the qualified immunity analysis." *Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874, 883 (8th Cir. 2025). A complaint that "fails to plausibly allege a [constitutional] violation" will not survive a motion to dismiss. *Jones v. City of St. Louis*, 104 F.4th 1043, 1048 (8th Cir. 2024) (reversing the district court's denial of the individual city defendants' motion to dismiss because the first amended complaint "fails to plausibly allege a Fourth Amendment violation").

Here, Hood-Bey has failed to plausibly allege most of the constitutional claims that the Court has ascertained in his Complaint and therefore he has not overcome the OPD Defendants' entitlement to qualified immunity on those claims.

26

1.    Hood-Bey Fails to State Any Fourteenth Amendment
      Claims

The Court begins with Hood-Bey's § 1983 claims for violations of his Fourteenth Amendment rights.

Hood-Bey has not alleged a substantive due process violation because he has not "demonstrate[d] that a fundamental right was violated and that the conduct shocks the conscience." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 995 (8th Cir. 2016) (internal quotation marks and citations omitted). Even if the Court liberally construes Hood-Bey's Complaint to assert violations of his fundamental right to travel, *see Hughes*, 840 F.3d at 995, and his rights as a parent, *see Mitchell*, 959 F.3d at 897, Hood-Bey has not alleged that the OPD Defendants engaged in any conduct "so severe" that "it amounted to a brutal and inhumane abuse of power literally shocking to the conscience." *Truong*, 829 F.3d at 631 (internal quotation marks omitted). Accordingly, Hood-Bey has failed to plead a substantive due process violation.

Hood-Bey has also failed to plead a procedural due process claim against the OPD Defendants. Liberally construing the Complaint, it appears that any procedural due process claims Hood-Bey asserts against the OPD Defendants relate to his arrests and prosecutions in state criminal court, but these types of claims are "properly addressed under a Fourth Amendment analysis," not a due process analysis. *Greenman v. Jessen*, 787 F.3d 882, 890–91 (8th Cir. 2015). "To demonstrate a procedural-due-process violation, [a plaintiff] must show a deprivation of life, liberty, or property without sufficient process." *Hughes*, 840 F.3d at 994. Courts must "reach the question of what process is due only if the [plaintiff] establish[es] a constitutionally protected" interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Put plainly, there are no allegations in Hood-Bey's Complaint suggesting which of his constitutionally protected interests were affected by the OPD Defendants' actions. In other words, Hood-Bey has not claimed that the OPD

Defendants violated any recognized life, liberty, or property interest and therefore he has not plausibly stated a procedural due process claim.

Hood-Bey also has not alleged an equal protection claim against the OPD Defendants. "[T]he Equal Protection Clause [of the Fourteenth Amendment] requires that the government treat [ ] similarly situated persons alike." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (internal quotation marks omitted) (quoting *Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996)). Hood-Bey has not alleged any facts suggesting that the OPD Defendants treated him differently than similarly situated persons. In fact, Hood-Bey has not even identified the grounds on which the OPD Defendants apparently discriminated against him. Although his Complaint is inundated with allegations that he is an "Aboriginal, Indigenous Moorish American National," nowhere has he alleged that the OPD Defendants treated him differently than similarly situated non-Moorish American Nationals. *See, e.g.*, Filing 1 at 76, 77, 79. Hood-Bey thus fails to plausibly allege an equal protection violation. *See Jones*, 104 F.4th at 1048.

In sum, Hood-Bey has not plausibly pleaded that the OPD Defendants violated any of his Fourteenth Amendment rights. Accordingly, Hood-Bey's substantive due process, procedural due process, and equal protection claims are dismissed and the OPD Defendants are entitled to qualified immunity. *See Watkins*, 102 F.4th at 951 ("To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right. . . ." (internal quotation marks and citations omitted)).

2.     Hood-Bey Fails to State any Fourth Amendment Unlawful Arrest Claims

Hood-Bey also has not plausibly pleaded any Fourth Amendment unlawful arrest claims against the OPD Defendants. "Police officers violate the Fourth Amendment when they conduct an arrest without a warrant or probable cause." *Waters v. Madson*, 921 F.3d 725, 736 (8th Cir.

28

2019). "A warrantless arrest does not violate the Fourth Amendment if it is supported by probable

cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause."

*White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) (internal quotation marks and citations

omitted).

Hood-Bey's Complaint identifies three occasions on which he was apparently arrested by

various combinations of the OPD Defendants. Hood-Bey pleads only the following about the first

two alleged arrests:

> The Petitioner / Isaiah Hood-Bey while Parked on 2554 Fowler Ave Eastward was
> detained by Policeman / Prosecuting Witness, Officers: Officer Noah Zendejas
> (2513) and Raan L. Ellebb [sic] ( 2485) , Authorized by Luciano S Rizzo (1930),
> Booked by Booking Officer Lacee K Gerweck (Y656); employed by the police
> department of Douglas County , and Was assigned Judge Forsberg and Judge Beau
> Finley who stated that Isaiah Hood-Bey/Isaiah Rainell Hood was in violation of
> statute 60-6, 196-.15 , (3) 28-707, 60-4,108 and 20-22 which is private police (being
> classed as law).
>
> The Petitioner / Isaiah Hood-Bey while Parked and Visiting a Family member on
> 3207 N 61st Street Northward was detained by Policeman / Prosecuting Witness,
> Officer Austin Beck (2443), Jessica Walker (2520); employed by the police
> department of Douglas County, and was then seen by Judge Derek R. Vaughn and
> ended up getting assigned to Judge Marcela A. Keim but was sick then assigned to
> another Judge ( unknown) who then stated that Isaiah Hood-Bey/ Isaiah Rainell
> Hood was in violation of statute 60-6,196, 60-6,197, 36-70 and place Isaiah Rainell
> Hood on probation at Douglas county Probation office which is private policy
> (being classed as law).

Filing 1 at 76 (spacing, capitalization, and punctuation in the original). These allegations raise

more questions than they answer. For instance, it is not clear from Hood-Bey's Complaint why he

was arrested twice "while [p]arked" or whether those arrests were warrantless. It is also not clear

what statutes Hood-Bey allegedly violated. Hood-Bey's allegations regarding these first two

occasions "are nothing more than unsupported naked assertions devoid of further factual

enhancement." *Jones*, 104 F.4th at 1049 (cleaned up) (quoting *Iqbal*, 556 U.S. at 678). Hood-Bey

alleges more facts regarding his third arrest—which was apparently for trespassing and which

occurred at "Murphys Gas station" after he had been "assaulted and a victim of robbery where [his] keys and phone was [sic] stolen"—but the facts he alleges doom an unlawful arrest claim. Filing 1 at 76. Based on Hood-Bey's allegations, before he was arrested "[t]he Officers listed went to their car and came back and said [Hood-Bey] had warrants." Filing 1 at 76. In other words, Hood-Bey specifically asserts that his third arrest was not warrantless.

Because his Complaint does not plausibly demonstrate that any unlawful arrests occurred, Hood-Bey has not alleged facts sufficient to overcome the OPD Defendants' entitlement to qualified immunity on any Fourth Amendment unlawful arrest claims. *See Watkins*, 102 F.4th at 951 ("To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right. . . ." (internal quotation marks and citations omitted)).

>    3.    The Court *Sua Sponte* Stays Hood-Bey's Fourth Amendment Excessive Force Claim Against Defendant Officer Scott

Hood-Bey's Fourth Amendment excessive force claim is the only claim against the OPD Defendants even remotely supported by factual allegations in his Complaint. "An officer's use of force violates the Fourth Amendment if it is 'objectively unreasonable.'" *Poemoceah v. Morton Cnty., North Dakota*, 117 F.4th 1049, 1054–55 (8th Cir. 2024) (quoting *Tatum v. Robinson*, 858 F.3d 544, 547 (8th Cir. 2017)). "Reasonableness depends on the circumstances surrounding the use of force, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting same). "The Fourth Amendment analysis is one of 'objective reasonableness,' not subjective conjecture." *Id.* (quoting *Jackson v. Stair*, 944 F.3d 704, 710 (8th Cir. 2019)).

30

Here, Hood-Bey alleges that during his third incident involving police officers, he was "told [he was] being charged for trespassing snatched to the ground handcuffed and then [he] was punched in the face where [he] had [his] nose broken." Filing 1 at 76. His excessive force claim appears to be against a single OPD Defendant only: "Officer Scott (first name Unknown Badge Number 2467) The one who punched/Broke [Hood-Bey's] nose." Filing 1 at 76 (capitalization in the original). Hood-Bey has not alleged many facts to support his excessive force claim against Officer Scott, but he has pleaded more facts to support this claim than any other claim apparently asserted against the OPD Defendants or the other moving defendants. Notably, Hood-Bey's Complaint does not suggest that he was suspected of anything more than trespassing. *See Mitchell,* *28 F.4th at 898.* Hood-Bey also has not pleaded facts suggesting that he was actively resisting arrest or attempting to evade arrest when he was allegedly punched in the face. *See Poemoceah,* *117 F.4th at 1055.* On the contrary, Hood-Bey alleges that he was trying to explain to the officers that he "was taking care of the matter in Federal court" and trying to "show them the civil summons" for that federal case when he was arrested. Filing 1 at 76.

Rather than ruling on the merits of Hood-Bey's excessive force claim against Officer Scott, however, the Court will exercise its power to stay the claim because it is "related to rulings that will likely be made" in Hood-Bey's pending criminal prosecutions in state court, which derive from the same factual basis as all of Hood-Bey's § 1983 claims. *Wallace,* 549 U.S. at 393. Without a stay, the Court and the parties would be left to "speculate about whether the prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict—all this at a time when it can hardly be known what evidence the prosecution has in its possession." *Id.* (internal citation omitted). The Court thus "finds that the principles articulated in *Wallace v. Kato* dictate that further consideration of [Hood-Bey's] § 1983 claim[ ] should be stayed

until the underlying criminal charges pending against [him] are resolved." *Anderson v. Robinson*, No. 4:12-CV-967, 2013 WL 4502598, at *1 (E.D. Mo. Aug. 22, 2013). *See also AB Realty, LLC v. City of Omaha*, No. 8:19CV102, 2019 WL 13138271, at *18 (D. Neb. Sept. 24, 2019) (staying the plaintiffs' claims for procedural due process and Fourth Amendment violations because it was likely that rulings related to those claims would be made in the criminal proceeding that was pending before the state court); *Mumin v. Mayo*, No. 8:12CV313, 2013 WL 1292715, at *3 (D. Neb. Mar. 26, 2013) (concluding that "it is appropriate to stay Plaintiff's Fourth Amendment claims pending resolution of Plaintiff's state court criminal proceeding" because the plaintiff's claims, "if successful, necessarily require invalidation of a future conviction on the charges pending against him" in state court); *Crawford v. Hall Cnty Sheriff Dep't*, No. 8:24CV161, 2024 WL 3252717, at *3 (D. Neb. July 1, 2024) (concluding that the "principles of *Wallace v. Kato*" dictated staying the plaintiff's Fourth Amendment claims because the claims "are based on the same set of facts and circumstances which led to his indictment" in an ongoing federal criminal case).

Because the Court *sua sponte* stays the excessive force claim against Officer Scott, the Court denies as premature the OPD Defendants' Motion to Dismiss only as it pertains to the excessive force claim.

### c.  Summary

In sum, the Omaha Police Department is dismissed from this action because it is not a suable entity under Nebraska law. Hood-Bey's Fourteenth Amendment claims against the remaining OPD Defendants are dismissed for failure to state a claim, as are Hood-Bey's Fourth Amendment unlawful arrest claims. Hood-Bey's only remaining claim against any OPD Defendant is his Fourth Amendment excessive force claim against Officer Scott, but this claim is

stayed until the criminal proceedings against Hood-Bey have concluded, or until the Court otherwise decides to proceed with the action with or without a motion from a party.

### C.  The Motions for Default Judgment

Hood-Bey has filed seven Motions for Default Judgment and between the seven motions, he has identified all 33 defendants as defaulting. Filing 27; Filing 28; Filing 60; Filing 62; Filing 64; Filing 68; Filing 69. Hood-Bey's Motions for Default Judgment against all the defendants are deficient for multiple reasons. First, five of the 33 allegedly defaulting defendants had timely filed Motions to Dismiss, Filing 7; Filing 10, that were still pending at the time Hood-Bey filed his first Motion for Default Judgment, Filing 27. Second, as the Court discusses in Section II.D. below, the majority of the defendants have not been properly served, so there is no indication that those defendants have failed to plead or otherwise defend in response to a Complaint properly served within the time provided by Federal Rule of Civil Procedure 12(a).

Moreover, Hood-Bey's Motions for Default Judgment are procedurally deficient. Federal Rule of Civil Procedure 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Entry of default by the Clerk of Court pursuant to Rule 55(a) is the first step in a two-step process for default judgment. See *Westchester Fire Ins. Co. v. Edge Elec., LLC,* No. 8:22CV170, 2022 WL 4388797, at *1 (D. Neb. Sept. 22, 2022), *on reconsideration in part*, No. 8:22CV170, 2022 WL 16748685 (D. Neb. Nov. 7, 2022) (citing *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 118 n.2 (8th Cir. 1997)). The applicable local rule, NECivR 55.1(a), states the requirements to obtain entry of default by the Clerk. Hood-Bey failed to seek entry of default by the Clerk under Rule 55(a) as a prerequisite to entry of default judgment pursuant to Rule 55(b).

Even if Hood-Bey had met the prerequisite of obtaining entry of default pursuant to Rule 55(a), his Motions for Default Judgment would still be deficient. Under Rule 55(b) of the Federal Rules of Civil Procedure, a default judgment may be entered either "By the Clerk" or "By the Court." *See* Fed R. Civ. P. 55(b)(1)-(2). Rule 55(b)(1) sets forth the requirements necessary for the Clerk to enter a default judgment. Fed. R. Civ. P. 55(b)(1). Rule 55(b)(2) sets forth the requirements necessary for the Court to enter a default judgment. Fed. R. Civ. P. 55(b)(2). This Court's local rules similarly distinguish between Clerk-entered default judgments and Court-entered default judgments. *See* NECivR 55.1(b)-(c). Hood-Bey's Motions are made pursuant to Fed. R. Civ. P. 55(b)(2) and NECivR 55.1(c) because he specifically discusses entry of default judgment by the Court pursuant to Rule 55(b)(2). *See, e.g.*, Filing 69 at 2. Nebraska Civil Rule 55.1(c) provides the following,

> If a party requests a judgment from the court under Federal Rule of Civil Procedure 55(b)(2), the party must, <u>after</u> obtaining a clerk's entry of default under Federal Rule of Civil Procedure 55(a) and Nebraska Civil Rule 55.1(a):
>
> (1) file a motion for default judgment;
>
> (2) file an affidavit stating that the party against whom the default judgment is requested is (a) not an infant or incompetent person as stated in Federal Rule of Civil Procedure 55(b)(2) or (b) meets the exceptions stated in Federal Rule 55(b)(2);
>
> (3) e-mail to the judge's chambers a proposed judgment; and
>
> (4) in cases in which damages must be proved, request an evidentiary hearing before the trial judge.

NECivR 55.1(c) (emphasis in the original). Hood-Bey has not met the procedural requirements specified in NECivR 55.1(c) for entry of default by the Court.

Accordingly, the Court denies Hood-Bey's Motions for Default Judgment. The Court likewise denies as moot Hood-Bey's Motion to Expedite the Court's decisions on the Motions for Default Judgment.

### D. The Non-Moving Defendants

Although Hood-Bey has named 33 defendants in this action, only 15 of those defendants moved to dismiss. The remaining 18 defendants have not entered an appearance or otherwise responded to Hood-Bey's Complaint even though Hood-Bey has purportedly served all 33 defendants. Upon review of the Summonses Returned Executed, Filing 12 through Filing 24; Filing 65; Filing 66, the Court finds that Hood-Bey has not properly accomplished service upon the remaining 18 defendants. The Court's review of the Proofs of Service, Filing 33 through Filing 52, also reveals that the Proofs of Service are inadequate.

Nebraska Revised Statute § 25-510.02 provides the method for serving the State of Nebraska or any state agency, as well as a county or any political subdivision. Nebraska Revised Statute § 25-511 provides the method for serving a state employee, while Neb. Rev. Stat. § 25-508.01 provides the method for serving an individual. Nebraska Revised Statute § 25-505.01(1)(c) explains the requirements for service by certified mail, including the requirement that "proof of service with the signed receipt attached" must be filed with the Court. There is no indication in the record that the defendants were served in compliance with these statutes.

The Court's review of the record also shows that Hood-Bey has failed to make service on the remaining 18 defendants within the time provided by Federal Rule of Civil Procedure 4(m). Thus, the Court "on its own after notice to the plaintiff . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Rule 4(m) provides further, "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Consequently, before dismissing the remaining 18 defendants from this case for failure to make service of process, the Court will give Hood-Bey the opportunity to show good cause why service has not been made within the time provided by Rule 4(m).

## III. CONCLUSION

Accordingly,

IT IS ORDERED that

1. Hood-Bey's claims seeking dismissal of his pending state charges are dismissed without prejudice;

2. Defendant Kollasch's Motion to Dismiss, Filing 7, is granted;

3. Defendant Kollasch is dismissed from this action;

4. The School Defendants' Motion to Dismiss, Filing 10, is granted; and

5. Defendants Omaha Public Schools, Sunny Slope Elementary School, Maria Roden, and Emily Kierscht are dismissed from this action.

IT IS FURTHER ORDERED that

6. The OPD Defendants' Motion to Dismiss, Filing 58, is granted in part and denied in part;

7. The Omaha Police Department is dismissed from this action;

8. Hood-Bey's Fourteenth Amendment claims against the OPD Defendants are dismissed;

9. Hood-Bey's Fourth Amendment unlawful arrest claims against the OPD Defendants are dismissed;

10. Hood-Bey's Fourth Amendment excessive force claim is dismissed against all of the OPD Defendants except defendant Officer Scott; and

11. Hood-Bey's Fourth Amendment excessive force claim against Officer Scott is stayed pending final disposition of the criminal charges pending against Hood-Bey in the County Court of Douglas County, or until such other time the Court deems proper to proceed. Hood-Bey shall notify this Court in writing concerning the final disposition of the criminal charges pending against him within thirty (30) days after final disposition of the charges is made.

IT IS FURTHER ORDERED that

12. Hood-Bey's Motions for Default Judgment, Filing 27; Filing 28; Filing 60; Filing 62; Filing 64; Filing 68; Filing 69, are denied;

13. Hood-Bey's Motion to Expedite, Filing 72, is denied as moot; and

14. Absent a motion for an extension of time for leave to serve the remaining 18 defendants demonstrating good cause, Hood-Bey's claims against those defendants will be dismissed in seven days from the date of this order.

Dated this 22nd day of April, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge